

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

___

TARA LYNN SULLIVAN,

        Plaintiff,

  -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

        Defendant.

1:18-CV-00871-MJR

DECISION AND ORDER

___

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 18).

Plaintiff Tara Lynn Sullivan ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 11) is denied and defendant's motion (Dkt. No. 17) is granted.

## BACKGROUND

Plaintiff filed an application for DIB on November 7, 2014 alleging disability since July 8, 2014 due to depression, generalized anxiety disorder, and panic attacks. (*See* Tr. 237, 268).[2] Plaintiff's disability benefits application was initially denied on February 24, 2015. (Tr. 11). Plaintiff sought review of the determination, and a hearing was held before

___

[1] The Clerk of Court is directed to amend the caption accordingly.
[2] References to "Tr." are to the administrative record in this case.

Administrative Law Judge ("ALJ") William Manico on March 3, 2017. (Tr. 98-138). ALJ Manico heard testimony from plaintiff, who was represented by counsel, as well as from Matthew Lampley, an impartial vocational expert, and Sandra Williams, Plaintiff's mother. (*Id.*). On May 9, 2017, ALJ Manico issued a decision that plaintiff was not disabled under the Act. (Tr. 8-34). Plaintiff timely sought review of the decision by the Appeals Council. (Tr. 35-42, 235-236). Plaintiff's request for review of the decision was denied by the Appeals Council on June 27, 2018. (Tr. 1-6). The ALJ's May 9, 2017 denial of benefits then became the Commissioner's final determination, and the instant lawsuit followed.

Born on March 11, 1983, plaintiff was 31 years old on the alleged disability onset date and 33 years old on the date of the hearing. (Tr. 28, 265). Plaintiff is able to communicate in English, has at least a high school education, and has previously worked as a hair stylist, sales associate, and restaurant worker. (Tr. 28, 114-115, 132, 267-268).

## DISCUSSION

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

2

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second,

whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to

5

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ found that plaintiff last met the insured status requirements of the Act on December 31, 2017. (Tr. 11). The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of July 8, 2014. (Tr. 13). At step two, the ALJ found that plaintiff had the following severe impairments: (1) fibromyalgia; (2) depression; (3) anxiety; (4) posttraumatic stress disorder; and (5) borderline personality disorder.[3] (Tr. 13). At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 14-16). Before proceeding to step four, the ALJ assessed plaintiff's RFC through the date last insured as follows:

> [T]he [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) but with the following exceptions:
>
> - The [plaintiff] may only occasionally lift and/or carry 20 lbs.
> - The [plaintiff] may only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. The [plaintiff] may never climb ladders ropes or scaffolds.
> - The [plaintiff] may only frequently reach, handle, finger, feel or operate foot controls.
> - The [plaintiff] should avoid exposure to hazards.
> - The [plaintiff] should avoid concentrated exposure to extremes of cold, heat, and humidity.
> - The [plaintiff] retains the mental residual functional capacity to perform unskilled work, which would allow her to have a regular work

---

[3] Also at step two, the ALJ noted that at the conclusion of her consultative evaluation, plaintiff was diagnosed with marijuana dependence, but it was found to be in remission. (Tr. 14). The records showed no significant use, or signs of drug seeking behavior, since plaintiff stopped marijuana use at age 21. (Id.) Additionally, the ALJ noted the plaintiff was treated for vitamins B12 and D deficiency and gastroesophageal reflux disease. (Id.) The records showed these conditions required minimal treatment and were considered stable and well controlled with medication. (Id.)

6

> break approximately every two hours, where interactions with others is limited to approximately a third of the workday, and which does not involve the performance of fast paced assembly work.

(Tr. 16).

Proceeding to step four, the ALJ reviewed the vocational information and the testimony of VE Lampley to conclude that plaintiff is unable to perform past relevant work given the limitations set forth in her residual functional capacity. (Tr. 28). The ALJ noted that if the plaintiff had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed. (Tr. 27). However, the ALJ assessed that plaintiff's ability to perform sedentary work is impeded by additional limitations. (Tr. 16, 27.) Proceeding to step five, and after considering testimony from VE Lampley in addition to plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as table worker, addressing clerk, and document preparer. (Tr. 27). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from July 8, 2014, the alleged onset date, through May 9, 2017, the date of the decision. (*Id.*).

IV. *Plaintiff's Challenges*

a. *Listings Determination*

Plaintiff argues that she meets the criteria for Listings 12.04 and 12.08. (See Dkt. No. 12 (Plaintiff's Memorandum of Law)). For the reasons set forth below, the Court finds that the ALJ properly determined that plaintiff's impairments fail to satisfy "paragraph B" or "paragraph C" criteria for Sections 12.04 and 12.08 of the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

7

The criteria for a listings-level impairment in the categories of "Depressive, bipolar and related disorders" (§ 12.04) and "Personality and impulse-control disorders" (§ 12.08), require fulfillment of relevant Part A criteria (medical documentation of the diagnostic symptoms of such disorder(s)) and Part B criteria ("Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) [u]nderstand, remember, or apply information; (2) [i]nteract with others; (3) [c]oncentrate, persist, or maintain pace; and (4) [a]dapt or manage oneself.") Alternately, a claimant may satisfy listings 12.04 or 12.08 by meeting Part A and Part C requirements, but here Plaintiff does not claim to have satisfied Part C criteria for either listing. (See Dkt. No. 12).

A "marked limitation" in an area of mental functioning categorized under Part B means an individual's ability to function independently, appropriately, effectively, and on a sustained based is seriously limited. 20 C.F.R. Pt 404, Subpt. P, App'x 1, § 12.00(F). An "extreme limitation" means an individual is not able to function independently, appropriately, effectively, and on a sustained based in that area. *Id.* Mental functioning in these areas evidenced by daily activities at home and in the community is relevant to assessing an individual's mental functioning in work settings. *See id.*

The ALJ concluded that plaintiff had mild functional limitations in the "paragraph B" areas of understanding, remembering, or applying information and adapting or managing oneself. He further concluded that the plaintiff had moderate limitations in the areas of interacting with others and concentrating, persisting, and maintaining pace. Based on this, the ALJ held that plaintiff did not meet "paragraph B" criteria for § 12.04 or § 12.08.

Plaintiff bears the burden of proof at step three to show that her impairments meet, or are medically equivalent to, *all* the required criteria of a listing. *See, e.g.,* 20 C.F.R. 404.1525(d); *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Naegele v. Barnhart*, 433 F.Supp. 2d 319, 342 (W.D.N.Y. 2006).

Plaintiff asserts that she meets the part B criteria for both listings because she has "severe" limitations in maintaining concentration for two hours straight for at least four such sessions per workday; in her ability to interact with others, including the general public or customers; and in performing at a consistent pace without an unreasonable number and length of rests. (See Dkt. No. 12). To support this claim, plaintiff cites a Mental RFC Assessment completed by Alyssa Sullivan, LMSW, on January 31, 2017, which states that plaintiff has severe limitations in several sub-categories of understanding and memory, sustained concentration and persistence, social interaction, and adaption. (Tr. 713-714). Plaintiff submitted another Mental RFC Assessment prepared by Angela Roche, NP, dated November 11, 2016, which also denotes that plaintiff had severe limitations in several sub-categories of understanding and memory, sustained concentration and persistence, social interaction, and adaption. (Tr. 710-711).

Nurse practitioners, physician assistants, and therapists are not "acceptable medical sources" of evidence under the Regulations. *See* 20 C.F.R. 404.1527(f); SSR 06-03p. The opinions of these "other sources" may be considered by the ALJ when assessing the severity of claimant's impairment and ability to work, but they do not need to be given controlling weight. *Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2d. Cir. 2008). Further, whether rendered by an acceptable or non-acceptable source, the more consistent a medical opinion is with the record as a whole, the more weight should be

given to that opinion. *See* 20 C.F.R. 404.1527(c)(4); (f)(1). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

So long as the ALJ sufficiently identifies and explains the inconsistencies he sees in the record when rejecting or discounting an opinion, his evaluation may be upheld. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). Here, the ALJ properly weighed these opinion sources based on inconsistencies with the entirety of the evidence. *See Viteritti v. Colvin*, 2016 U.S. Dist. LEXIS 109358 (E.D.N.Y. 2016) (ALJ did not err in giving little weight to treating source's opinions that plaintiff had mostly extreme and marked mental limitations because the opinions were inconsistent with plaintiff's treatment records showing stabilized mood and decreased anxiety with treatment); *Fernandez v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 141355 (S.D.N.Y. 2017) ("[A]n ALJ is not required to award controlling weight to a treating physician's opinion that is inconsistent with other treatment records.")

The ALJ afforded only partial weight to the opinion of Ms. Sullivan. (Tr. 24). He reasoned that, aside from the fact Ms. Sullivan, a licensed master social worker, is not an acceptable medical source, her findings were inconsistent with her own notes and the medical evidence as a whole. (Tr. 22-24). The ALJ explained in detail that although Ms. Sullivan opined that plaintiff had marked to extreme limitations in her ability to understand, remember, and carry out instructions (including simple instructions and tasks), her treatment notes showed that plaintiff was capable of discussing and charting her treatment path, making arrangements to visit her ailing father in another state, and

10

scheduling and rescheduling appointments as necessary. (Tr. 24, 416-418, 689, 691). Ms. Sullivan also determined that claimant had moderate to marked limitations in her ability to interact with others, including supervisors, co-workers, and the public. (Tr. 24, 416-418). The ALJ agreed that the record showed "some difficulty in this area," but found no evidence of marked impairments in interactions with others. (Tr. 24). He refers to treatment records which show plaintiff was capable of limited interactions with others, i.e., living with others, shopping in stores for groceries, leaving home for appointments, and making a new friend who taught her to hula hoop and make jewelry. (Tr. 24, 681).

The ALJ gave little weight to the opinion of Ms. Roche. He reasoned that, aside from the fact that Ms. Roche, a nurse practitioner, is not an acceptable medical source, the evidence does not support the severity and level of restriction opined by Ms. Roche. (Tr. 24-25). Ms. Roche indicated that plaintiff had moderately severe to severe functional impairments in her ability to understand, remember, sustain concentration, and interact with others. She determined that workplace stressors would exacerbate plaintiff's symptoms, and that plaintiff would be incapable of performing routine, repetitive, simple, entry-level jobs. (Tr. 18, 710-711).

The ALJ found almost no support in the record for the restrictions in Ms. Roche's opinion. (Tr. 25). Plaintiff's testimony and self-reporting indicated that she is able to follow spoken and written instructions (Tr. 15, 114, 283). Medical records show plaintiff was fully oriented, with intact attention, concentration, and memory. (Tr. 407, 453, 455, 457, 460, 463, 466, 469). He states that although the evidence shows plaintiff has some difficulty with interacting with other and sustaining concentration, it does not support a finding that she cannot engage in simple, unskilled work. (*Id.*).

11

In weighing these opinions, the ALJ pointed to additional treatment records that indicated plaintiff's level of disability relevant to the "paragraph B" criteria was mild to moderate, and that her mental health symptoms were not disabling. (Tr. 17). This included Horizon Health Services staff records from 2014 which note that although plaintiff appeared depressed, her concentration and insight were good; her speech was good; she had no abnormalities in her thought processes or perceptions; and her memory was intact. (Tr. 17, 387, 394). During these visits, Plaintiff had a Global Assessment of Functioning (GAF) score of 55, which indicated only moderate functional impairment. (Tr. 386, 393).

Further, the consultative examiner, Dr. Ransom, assessed that plaintiff would have only mild difficulty understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule, performing complex tasks, relating adequately to others, and appropriately dealing with stress. (Tr. 23, 407). Dr. Ransom's examination also notes that plaintiff's thought processes were "coherent and goal directed," her attention, concentration, and memory were intact, and she would have no difficulty managing her funds or personal care. (Tr. 15, 405-408). The ALJ explained that he gave Dr. Ransom's opinion partial weight because the evidence suggests that plaintiff has moderate difficulty interacting with others and in her ability to perform more than complex tasks, which was not reflected in Dr. Ransom's opinion. (Tr. 23).

Finally, the state agency psychologist, Dr. Kleinerman, concluded that plaintiff's mental impairment did not meet or equal any of the listings. (Tr. 142). The signature of a State agency medical or psychological consultant on a Disability Determination and

Transmittal Form ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. SSR 96-6p.

The ALJ made a proper determination that the mental health findings of Ms. Sullivan and Ms. Roche were more extreme than the evidence supports. This Court finds that substantial evidence supported the ALJ's determination that Plaintiff's impairments failed to satisfy the Part B criteria for Listing Sections 12.04 and 12.08.

### b. Residual Functional Capacity

Plaintiff additionally argues that she does not retain the residual functional capacity to perform work sedentary work with additional exceptions as determined by the ALJ. Plaintiff challenges the ALJ findings because he failed to give great weight to the opinions of Ms. Sullivan, Ms. Roche, and Amy Munro, PA, who submitted a Medical Source Statement dated February 2, 2017 related to plaintiff's physical abilities. (Tr. 717-721).

The ALJ is responsible for assessing a claimant's residual functional capacity based on all relevant medical and other evidence. 20 C.F.R. 404.1545(a); 1546(c). In determining RFC, the ALJ must consider objective medical evidence as well as nonmedical information, including statements about a claimant's pain and other symptoms. 20 C.F.R. 404.1529(c)(2); (c)(3). The Regulations further direct the ALJ to consider whether there are any inconsistencies in the evidence, and the extent to which there are any conflicts between claimant's statements and the rest of the evidence about how a claimant's symptoms affect her. 20 C.F.R. 404.1529(c)(4).

The ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's

13

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence on the record for the reasons explained in this decision." (Tr. 19).

As discussed above, the ALJ was within his discretion to afford less weight to the opinions of Ms. Sullivan and Ms. Roche based on inconsistencies with their own treatment notes, plaintiff's testimony, and the record as a whole. The RFC determination does credit Ms. Sullivan's and Ms. Roche's assessment that plaintiff has some degree of impairment in concentration, focus, and interacting with others, in that plaintiff's sedentary work capacity has the additional limitations of unskilled work; which allows regular work breaks approximately every two hours; where interactions with others are limited to approximately a third of the workday; and which does not involve the performance of fast paced assembly work. (Tr. 16).

Plaintiff makes a further objection that the ALJ made no attempt to contact Sullivan or Roche for clarification regarding their opinions. The mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician. *Micheli v. Astrue*, 501 Fed. Appx. 26, 29 (2d Cir. 2012). It is the purview of the ALJ to weigh the relevant evidence and decide whether a disability determination can be made based on the evidence. *Id.*, at 29-30. The ALJ is under no obligation to seek additional information to advance a benefits claim where there are no obvious gaps in the administrative record and the ALJ already possesses a "complete medical history." *See Quinn v. Colvin*, 199 F.Supp. 3d 692, 709 (W.D.N.Y. 2016) (citing *Jennings v. Colvin*, 2014 U.S. Dist. Lexis 104252, *13 (W.D.N.Y. 2014) (citations omitted).

Here, there are no clear gaps in the record as to the medical opinions of Ms. Sullivan and Ms. Roche. The ALJ relied on voluminous treatment notes from plaintiff's frequent clinical visits with both providers spanning years 2014 to 2018. (Tr. 510-781). The records and statements of both treating and examining sources contain sufficient diagnostic, examination, and opinion evidence from which the ALJ could determine whether plaintiff was disabled. See *Jennings*, at *13-14 (finding that ALJ properly developed the record where he deciphered handwritten notes of one physician and held the record open for submission of complete records from another physician); compare *Rosa v. Callahan*, 168 F.3d 72, 79-80 (2d Cir. 1999) (finding the record insufficient to reject a treating source opinion because of numerous gaps, including a short, conclusory assessment and sparse notes reflecting considerably fewer visits with the claimant than were likely held over several years).

Returning to the RFC determination, the ALJ gave only partial weight to the opinion of Ms. Munro, a non-acceptable medical source, because of disparity between her treatment record and the "remarkably precise" restrictions in her medical source statement. (Tr. 25-26, 717-728). Plaintiff's testimony showed Ms. Munro completed the form based on plaintiff's answers to the checklist of limitations in addition to her own knowledge of plaintiff's history. (Tr. 26, 108-111). It is proper for the ALJ to afford little or no weight to an opinion statement that was based on claimant's complaints and does not correspond with the provider's own records. See *Lewis v. Colvin*, 548 Fed. Appx. 675, 677 (2d Cir. 2013) (upholding ALJ's decision to give little weight to physician evaluation based on grounds that it was "internally inconsistent with previous treatment notes, and appeared to be based on subjective statements of the claimant.") Further, an opinion

15

based solely on a claimant's representations, rather than the physician's first-hand observations, is not deserving of controlling weight. See Ratliff v. Barnhart, 92 Fed. Appx. 838, 840 (2d Cir. 2004).

The ALJ properly gave some credit to the opinions of Ms. Munro, and discounted others, when formulating his RFC determination. (Tr. 19, 25-27). Specifically, he rejected the sitting limitations, because the treatment record showed no complaints in that area. (Tr. 25, 429, 449, 452, 454, 462-463, 465.). He rejected Ms. Munro's conclusion that plaintiff needed to lie down for 21 hours of the day, based on the lack of evidence in the record that plaintiff's fatigue or any other physical symptom(s) was severe enough to require a reclining position for all but three hours per day. (Id.). He also discounted the following restrictions for lack of corresponding complaints or other support in the treatment record: use of arms, hands, or fingers for only one third of the workday; postural limitations; and environmental limitations. (Tr. 25-26). Ms. Munro's treatment records show that plaintiff walked with a normal gait, had normal posture, full range of motion, intact motor strength, and denied back pain, bone pain, and swelling or weakness. (Tr. 426-467).

The ALJ gave credit to the opinions of Ms. Munro that are supported by complaints and clinical observations in the treatment record, i.e., joint pain in knees, fatigue and malaise, and numbness and tingling in arms and legs. (Tr. 25, 432, 435, 439, 441-442, 452, 456, 459). Crediting these findings, the ALJ limited the plaintiff to sedentary work with limited lifting, carrying, reaching, handling, and fingering, and with certain postural limitations. (Tr. 16, 26). An ALJ has the duty to resolve conflicts in medical evidence. Richardson v. Perales, 402 U.S. 389, 399 (1971). An ALJ may reject portions of a medical

opinion not supported by the objective evidence of record while accepting those portions that are supported by substantial evidence. See *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (ALJ was free to resolve conflicts of evidence and to credit only portions of a medical opinion which were supported by relevant evidence.)

Lastly, plaintiff argues that the ALJ erred by not relying upon the treating source opinion of Ms. Munro regarding plaintiff's impairments due to fibromyalgia when assessing plaintiff's RFC. (See Dkt. No. 12). Social Security Rulings recognize that longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing the existence and severity of the impairment because its symptoms can "wax and wane." See SSR 12-2p, 2012 SSR Lexis 1, 10, 17. Information from non-acceptable medical sources can also be used by the ALJ to evaluate the severity and functional effects. *Id.*, at 11.

The record shows that the ALJ recognized plaintiff's fibromyalgia diagnosis; listing fibromyalgia as a severe medically determinable impairment in his decision. (Tr. 13). However, "[a] finding of fibromyalgia as a medically determinable impairment 'without a finding as to the severity of symptoms and limitations does not mandate a finding of disability.'" *Maldonado v. Berryhill*, 2017 U.S. Dist. LEXIS 34782 (S.D.N.Y. 2017) (quoting *Rivers v. Astrue*, 280 F. Appx. 20, 22 (2d Cir. 2008).

In assessing the severity of fibromyalgia symptoms, the ALJ credited several of the functional limitations opined by Ms. Munro which were supported by other evidence in the record. This included diffuse pain, fatigue, sleep difficulties, and occasional weakness or numbness in arms, hands and legs; impairments which are reflected in his RFC determination of sedentary work with additional exceptions. (Tr. 16, 19, 25-26). The

ALJ also discussed the consultation and fibromyalgia diagnosis of Mark Schulte, MD, in February 2017, which supported some of Ms. Munro's opinions. (Tr. 19).

As described above, the opinions contained in Ms. Munro's medical source statement were afforded only partial weight due to internal inconsistencies with her own treatment notes and inconsistency with the objective medical record. The ALJ assessed that Ms. Munro's long-term knowledge about plaintiff's symptoms was not accurately reflected in her medical source statement, which the ALJ felt Ms. Munro "simply rubber stamped" with plaintiff's alleged restrictions. (Tr. 26). The ALJ complied with Regulations in assessing plaintiff's RFC in light of her fibromyalgia symptoms.

Plaintiff additionally objects that the ALJ erred in stating that Ms. Munro based her opinion on fibromyalgia which was not diagnosed until February 27, 2017. The evidence shows that WNY Medicine's records list a fibromyalgia diagnosis as early as December 5, 2016. (Tr. 25, 800). This error does not affect the ALJ's findings that the extent of symptoms indicated by Ms. Munro in her statement is not fully supported by the record.

This Court holds that substantial evidence supported the residual functional capacity determination of the ALJ.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: October 30, 2019
Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge